# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BUFFALO GROVE POLICE PENSION
FUND, Derivatively on Behalf of Nominal
Defendant NAVIENT CORPORATION,

               Plaintiff,

    v.

WILLIAM M. DIEFENDERFER, III, JOHN
K. ADAMS, ANNA ESCOBEDO CABRAL,
DIANE SUITT GILLELAND, KATHERINE
A. LEHMAN, LINDA A. MILLS, JOHN
(JACK) F. REMONDI, JANE J.
THOMPSON, LAURA S. UNGER, BARRY
L. WILLIAMS, ANN TORRE BATES,
STEVEN L. SHAPIRO, BARRY A.
MUNITZ, TIMOTHY J. HYNES, IV,
SOMSAK CHIVAVIBAL, JOHN M. KANE,
and CHRISTIAN M. LOWN,

               Defendants,

    - and -

NAVIENT CORPORATION,

               Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. _____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S UNOPPOSED MOTION FOR
## <u>PRELIMINARY APPROVAL OF SETTLEMENT</u>

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      Factual and Procedural History.................................................................. 2

        B.      The Terms of the Proposed Derivative Settlement .................................... 4

        C.      The Parties Support the Settlement............................................................ 7

III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 7

        A.      The Standard for Preliminary Approval .................................................... 7

        B.      The Court Should Grant Preliminary Approval of the Settlement ......................... 9

IV.     THE COURT SHOULD APPROVE THE FORM AND MANNER OF NOTICE........ 14

V.      PROPOSED SCHEDULE OF EVENTS ........................................................ 15

VI.     CONCLUSION................................................................................................... 16

## **TABLE OF AUTHORITIES**

PAGE(S)

CASES

*In re Am. Capital S'holder Deriv. Litig.*,
No. 11-2424 RJM, 2013 WL 3322294 (D. Md. June 28, 2013)..................................................8

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) .......................................9, 12, 13

*Arace v. Thompson*,
No. 08 Civ. 7905(DC), 2011 WL 3627716 (S.D.N.Y. Aug. 17, 2011) ...................................15

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ...................................................................................................8

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005).......................................................................................9

*Durrett v. Hous. Auth. of the City of Providence*,
896 F.2d 600 (1st Cir. 1990) .....................................................................................................9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)..........................................................................................................9

*Langendorf v. Conseco Senior Health Ins. Co.*,
No. 1:08-cv-03914 (N.D. Ill.) ...................................................................................................12

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) .............................................................................................9, 11

*Martens v. Smith Barney, Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) .............................................................................................13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)...................................................................................................................15

*New Eng. Carpenters Health Benefits Fund v. First Data Bank, Inc.*,
602 F. Supp. 2d 277 (D. Mass. 2009), *aff'd sub nom.*
*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*,
582 F.3d 30 (1st Cir. 2009).......................................................................................................12

*In re NVIDIA Corp. Deriv. Litig.*,
No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................11

*Parker v. Time Warner Entm't Co., L.P.*,
631 F. Supp. 2d 242 (E.D.N.Y. 2009) .....................................................................................13

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005)............................................................................12

*Shlensky v. Dorsey*,
    574 F.2d 131 (3d Cir. 1978).................................................................................10

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) .........................................................................13

*Tenuto v. Transworld Sys.*,
    No. Civ.A. 99-4228, 2001 WL 1347235 (E.D. Pa. Oct. 31, 2001)...........................8

*Tiro v. Pub. House Invs., LLC*,
    No. 11 Civ. 7679 (CM), 2013 WL 2254551 (S.D.N.Y. May 22, 2013)....................8

*Unite Nat'l Ret. Fund v. Watts*,
    No. 04CV3603DMC, 2005 WL 2877899 (D.N.J. Oct. 28, 2005).........................11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..................................................................................9

**STATUTES, RULES & REGULATIONS**

FEDERAL RULES OF CIVIL PROCEDURE
    Rule 23.1(c)..........................................................................................................7

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION (THIRD) §30.41 (1995).........................................8

MANUAL FOR COMPLEX LITIGATION (FOURTH) §13.14 (2004)....................................8

SEC RELEASE NO. 33-7233, 60 FED. REG. 53458 (Oct. 6, 1995)..................................15

## I.     INTRODUCTION

Plaintiff[1] and Defendants have reached a settlement (the "Settlement") in the above-captioned action (the "Action") resolving claims brought derivatively on behalf of Navient Corporation ("Navient" or the "Company").  As a result, Plaintiff now seeks an order from the Court: (i) granting preliminary approval of the proposed Settlement; (ii) directing that notice of the proposed Settlement be given to Navient's shareholders in the proposed form and manner; and (iii) scheduling a hearing before the Court to determine whether the proposed Settlement should be granted final approval.  As set forth in detail herein and in the Stipulation of Settlement attached hereto ("Stipulation"), the proposed Settlement finally resolves all the claims asserted in the Action.

The Settlement is the product of extensive arm's-length negotiations among the parties to the Action.  Pursuant to the terms of the Settlement, Navient has implemented, or agreed to implement, corporate governance reforms designed to strengthen internal controls, improve compliance policies and reporting procedures, and to enhance the independence and accountability of the Company's board of directors (the "Board") (collectively, the "Corporate Reforms").  It is undisputed that the Company's decision to implement the Corporate Reforms provides real benefits to Navient and the Company's shareholders.  In sum, the Settlement provides significant and material benefit to the Company, was reached after intensive arm's-length negotiations between experienced and informed counsel on both sides, and is well within the range of what might be approved as fair, reasonable, and adequate at a final approval hearing.  Accordingly, Plaintiff respectfully submits that the Court should grant preliminary approval of the Settlement and provide for notice to Navient's shareholders.

---

[1]     All capitalized terms, unless otherwise defined herein, have the same meaning given to them in the Stipulation.

## II.     BACKGROUND

### A.     Factual and Procedural History

Navient is a public corporation and was created as a result of a spin-off from SLM Corporation ("Sallie Mae") in 2014.  In connection with the reorganization of Sallie Mae, Navient, through its subsidiaries (including Navient Solutions, LLC and Pioneer Credit Recovery, Inc. ("Pioneer")), assumed the servicing and collection of certain private and federal student loans owned by Navient and various third parties.

Navient has been investigated by numerous governmental entities, including the Consumer Financial Protection Bureau ("CFPB") and multiple state attorneys general (the "State AGs"), who have alleged that Navient committed payment processing errors and failed to implement the internal controls necessary to appropriately service student loans, leading to misapplied payments, misinformation being sent to borrowers, and false reporting to credit agencies of certain loans.  In addition, these regulators have alleged that Navient failed to advise borrowers of certain rights as required by federal and state law.

The above allegations led to both regulatory and private actions to be taken against the Company, including lawsuits being filed by the CFPB and the State AGs, as well as two securities class action lawsuits.

On January 15, 2018, Plaintiff sent a demand to inspect certain books and records of the Company pursuant to 8 *Del. C.* §220 to investigate potential wrongdoing, mismanagement, and breaches of fiduciary duty by the members of the Company's Board and management (the "Demand").  On March 12, 2018, the Company produced to Plaintiff inspection materials pursuant to the Demand (the "220 Documents").  Plaintiff subsequently sent a settlement demand to the Company on May 21, 2018.

2

On May 7, 2018, Plaintiff provided Navient with a draft derivative complaint on behalf of the Company against certain directors and officers of Navient for breaches of fiduciary duty. Plaintiff alleged breach of fiduciary duty claims arising out of Defendants' roles in allowing the Company to function without effective controls in place to ensure compliance with minimum federal standards for student loan servicing, allowing the Company to violate the federal securities laws, and allowing certain Defendants to enrich themselves at the expense of the Company and its stockholders.  Defendants informed Plaintiff that they believed the claims were without merit and would defend them in court, if the complaint were filed.

In August 2018, the Parties agreed to mediate the claims at issue in the Demand.  The Parties retained Bill Baten ("Mr. Baten") of Van Winkle Baten Dispute Resolution to mediate their dispute.  Prior to mediating, the Parties exchanged written proposals on possible reforms intended to benefit Navient.  The Parties separately had multiple communications with Mr. Baten to discuss the merits of their allegations and their respective positions.  On September 21, 2018, the Parties attended a mediation in Washington, D.C., before Mr. Baten.  After a full-day session, the Parties reached an agreement-in-principle on substantive terms to settle the Action and executed a memorandum of understanding (the "MOU").   The Stipulation memorializes the terms of the Parties' agreement to settle the Action.

Plaintiff has owned shares of Navient common stock since the outset of the Action and continues to do so.  Plaintiff, having thoroughly considered the facts and law underlying the Action, and based upon the investigation and prosecution of the Action, the mediation that led to the Settlement, and after weighing the risks of continued litigation, and the value of the proposed Settlement, has determined that it is in the best interests of Navient and Navient Stockholders that the Action be fully and finally settled in the manner and upon the terms and conditions set

3

forth in the Stipulation, and that those terms and conditions are fair, reasonable, and adequate to Navient and Navient Stockholders.

Defendants have denied, and continue to deny, the allegations of wrongdoing, allegations of liability, and existence of any damages asserted in or arising from the Action.  Defendants have concluded that further litigation in connection with the Action would be time-consuming and expensive.  After weighing the costs, disruption, and distraction of continued litigation, the Parties have determined, solely to eliminate the risk, burden, and expense of further litigation, that the Action should be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

**B.     The Terms of the Proposed Derivative Settlement**

In consideration of the Settlement, Navient has agreed to adopt the corporate governance changes below for a period of at least five years.

a.     **Board Composition.**  Navient commits to appoint, or to have appointed, following receipt of Plaintiff's Complaint, two new independent directors to the Company's Board by the May 31, 2020.

b.     **Director Orientation and Continuing Education.**

i.     Within six months of their election or appointment, all new members of the Board must receive training on applicable consumer protection laws and state collection laws; and

ii.     In addition, every member of the Board shall receive annual training on compliance with such consumer protection laws, standards, and regulations.

c.     **Risk Oversight Disclosures.**  Navient shall prepare a summary of the Board's risk oversight responsibilities for publication on Navient's publicly facing

website.   Navient shall provide Plaintiff with the summary prior to the date when Plaintiff's final fairness papers are due with the Court.

        d.     **Revisions to the Board's Committee Charters.**   Navient shall review and revise, as necessary, the charter for each standing committee to ensure that each committee's risk oversight responsibilities are clearly described.   Navient shall provide Plaintiff with the final revisions prior to the date when Plaintiff's final fairness papers are due with the Court.

        e.     **Limitations on Directors and Audit Committee Service.**   Navient shall amend the Board's Governance Guidelines to provide that: (i) the Chair of the Audit Committee shall not serve on the audit committee of more than one other public company's board of directors; and (ii) any individual member of the Board will not serve as the chair of more than one committee or as a member of more than three committees.

        f.     **Independent Director Meetings in Executive Session.**

           i.     Navient shall amend the Board's Governance Guidelines to require the independent directors of the Board to meet in executive session at each regularly scheduled meeting of the Board, with a minimum requirement to meet at least four times annually, outside of the presence of any director who serves as an officer for Navient; and

           ii.     Navient shall amend the Board's Governance Guidelines to provide that the independent directors shall have the power to call for reporting from any business unit at the executive session, including, without limitation, from audit and compliance segments.

g. **Maintenance of Senior Executive Position(s) for Loan Servicing and Collections.** Navient shall maintain at least one executive position at the Senior Vice-President level or higher whose primary areas of responsibility shall be: (a) loan servicing operations; and (b) loan-related collections efforts reasonably designed to achieve compliance with state and federal law.

h. **Creation of a Loan Servicing and Collections Compliance Committee.**

    i.     Navient shall create an executive-level Loan Servicing and Collections Compliance Committee;

    ii.    The executive(s) listed in §II.B.g. above, General Counsel/ Principal Legal Officer, and Chief Risk and Compliance Officer shall all serve on the Loan Servicing and Collections Compliance Committee;

    iii.   The Loan Servicing and Collections Compliance Committee shall report directly to the Company's Audit Committee;

    iv.    The Loan Servicing and Collections Compliance Committee shall provide additional oversight of the Company's loan servicing and loan-related collections efforts.  Reports regarding these responsibilities shall be provided to the Company's Audit Committee; and

    v.     The Loan Servicing and Collections Compliance Committee shall provide additional oversight of internal controls regarding the Company's loan servicing and loan-related collections efforts.  Reports regarding these responsibilities shall be provided to the Company's Audit Committee.

i. **Revisions to the Code of Business Conduct.** Navient shall amend its Code of Business Conduct to state the following (or similar language):

> If you become aware of a failure by the Company to comply with loan servicing or collection procedures mandated by federal or state consumer protection laws and/or by the federal securities laws and SEC rules, regulations or guidance, or if you, or anyone else you are aware of, are asked to discharge your/their respective duties in a manner that fails to comply with any such rules, regulations, or guidance, you shall immediately report the event via email to legalcompliance@navient.com.

j.    **Revisions to the Confidential Whistleblower Program.**  Navient shall require the Chief Risk and Compliance Officer to meet with the Audit Committee at least annually to present on and discuss the current Whistleblower Policy and to consider any amendments that the Chief Risk and Compliance Officer or Audit Committee recommends.

### C.    The Parties Support the Settlement

Plaintiff, having thoroughly considered the facts and law underlying the Action, and based upon its investigation and prosecution of the Action, the mediation that led to the Settlement, and after weighing the risks of continued litigation, and the value of the proposed Settlement, has determined that it is in the best interests of Navient and Navient Stockholders that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation, and that those terms and conditions are fair, reasonable, and adequate to Navient and Navient Stockholders.

Likewise, Defendants and Navient support the Settlement as in the best interest of the Company.  In addition, the director(s) not named as defendants in the Action approve this Settlement as in the best interests of the Company.

### III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Standard for Preliminary Approval

Under Rule 23.1(c) of the Federal Rules of Civil Procedure, "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval."  Court approval

of a derivative settlement involves two steps: (1) determining "whether the proposed settlement is 'within the range of possible approval[,]'" such that notice of the settlement should be provided to shareholders, referred to as preliminary approval; and (2) after such notice has been provided, holding a fairness hearing to determine "whether the proposed settlement is 'fair, reasonable, and adequate[,]'" referred to as final approval.  *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) §13.14 (2004) (setting forth the approval procedure for settlement of a shareholder derivative action).

The purpose of preliminary approval is to determine whether to notify a company's stockholders of the proposed settlement and whether to proceed with a fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION (THIRD) §30.41, 237 (1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, . . . and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the [shareholders] of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.").

At the preliminary approval stage, a court need only assess whether the proposed Settlement falls "'within the range of reasonableness.'"  *In re Am. Capital S'holder Deriv. Litig.*, No. 11-2424 RJM, 2013 WL 3322294, at *3 (D. Md. June 28, 2013) (quoting *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 139 (D. Mass. 2004)); *Tenuto v. Transworld Sys.*, No. Civ.A. 99-4228, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31, 2001).  Thus, in order to grant preliminary approval, a court need only find that there is probable cause to warrant providing notice to shareholders and conducting a fairness hearing.  *Tiro v. Pub. House Invs., LLC*, No. 11 Civ. 7679 (CM), 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013) (citing *In Traffic Exec.*

*Ass'n E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980)); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) ("At the preliminary approval stage, . . . the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets [the requirements for final approval]").[2]   Here, the Settlement easily meets this standard.

### B.      The Court Should Grant Preliminary Approval of the Settlement

Courts have long held that the public interest favors settlement of complex litigation and is therefore to be encouraged.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (explaining that there is a strong policy favoring compromises that resolve litigation "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Durrett v. Hous. Auth. of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing a "'clear policy in favor of encouraging settlements'") (quoting *Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980)).  "Settlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Xcel Energy, Inc., Sec. Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1002 (D. Minn. 2005)); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'"); *Gen. Motors*, 55 F.3d at 784 (noting strong policy favoring compromises that resolve litigation, "particularly in

---

[2]        Unless otherwise indicated, citations are omitted.

class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation").

Here, the Corporate Reforms benefit the Company and are specifically designed to address the improper student loan servicing and deficient internal controls and reporting, as well as the lack of independence of the Board, which are at issue in the Action.  As such, they are designed to prevent any future problems of the type the Company has experienced and to improve the Company's corporate governance going forward.  This proposed Settlement is supported by the Parties, Navient, and the non-defendant Board members of Navient as in the best interest of the Company.

The most important factor in determining whether to grant preliminary approval of a derivative settlement is "the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest."  *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978). Here, the Settlement was reached after extensive arm's-length negotiations between and among counsel for the parties and provides substantial benefits to the Company and its stockholders, while eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery.  In connection with the Settlement, Navient will adopt, or has adopted, a series of significant reforms that improve the Company's overall corporate governance.  Thus, for all the reasons stated herein, the settlement of Plaintiff's claims on the agreed-upon terms is "within the range of possible approval," notice should be provided to Navient Stockholders, and the Court should schedule a hearing date in connection with the final approval of the Settlement.

Plaintiff and its counsel believe that their claims and allegations were and are meritorious.  However, they also recognize the possibility that their claims would not succeed,

and they would be unable to secure the substantial relief for Navient and its stockholders achieved by the Settlement, and might even fail to obtain any relief at all. Were the litigation to continue, numerous complex issues of law and fact would need to be resolved at considerable time and expense to Navient, the Parties, and the Court, including whether pre-suit demand on the Board was excused and whether Plaintiff's factual allegations were sufficient, threshold questions that are difficult to overcome.

Moreover, even if Plaintiff prevailed on a motion to dismiss, numerous substantive issues would remain, requiring intensive discovery, extensive motion practice, expert testimony, a lengthy trial, and the possibility of appeals. In comparison, the Settlement is an excellent immediate result for Navient, bringing the Company significant corporate governance and oversight reforms.

Corporate governance reforms, such as those negotiated in the Settlement, have supported settlements of countless stockholder derivative actions, as strong corporate governance is fundamental to a corporation's well-being and success. *See In re NVIDIA Corp. Deriv. Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008). Indeed, "'[c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies.'" *Id.* (quoting *Cohn*, 375 F. Supp. 2d at 853); *see also Unite Nat'l Ret. Fund v. Watts*, No. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005) (describing "the great benefit conferred upon [the company] as a result of the new corporate governance principles provided for in the settlement agreement"). The corporate governance reforms may, in fact, be more valuable to the Company and its stockholders than any potential monetary award or equitable relief obtained after trial, post-trial motions, and appeals. *See Zapata*, 714 F.2d at 461 ("effects of the suit on the functioning of the corporation may have a

substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment").

"Consideration of the complexity, expense and duration of continued litigation 'is intended to capture the probable costs, in both time and money, of continued litigation.'" *Langendorf v. Conseco Senior Health Ins. Co.*, No. 1:08-cv-03914, Final Order and Judgment at 14 (N.D. Ill. Nov. 18, 2009) (ECF No. 81) (quoting *Gen. Motors*, 55 F.3d at 812). "By comparing the significance of immediate recovery with the complexities, expense and likely duration of continued litigation, a court may assess whether it is proper for the parties 'to take the bird in the hand instead of [assuming the risk and cost of pursuing] a prospective flock in the bush.'" *Id.* (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)) (alteration in original). Shareholder derivative actions are notoriously complicated actions that involve complex legal and factual issues that can be litigated to a conclusion on the merits only at great expense over an extended period of time, and the Action would have been no exception. Absent the Settlement, the claims in the Action would have continued to be fiercely contested by the Parties. In all likelihood, continued litigation to a resolution at trial and/or on appeal would have taken several more years, at a minimum. "Continuing to litigate this case will require vast expense and a great deal of time, on top of that already expended." *Am. Int'l Grp.*, 2011WL 3290302, at *7. Even if Plaintiff were to prevail on its claims and establish liability, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. *New Eng. Carpenters Health Benefits Fund v. First Data Bank, Inc.*, 602 F. Supp. 2d 277, 281 (D. Mass. 2009), *aff'd sub nom. Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30 (1st Cir. 2009); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005).

"The court is 'entitled to rely heavily on the opinion of competent counsel'" in approving a settlement. *See Am. Int'l Grp.*, 2011 WL 3290302, at *8. Counsel for the Parties here have extensive experience in complex litigation of this nature and believe that the Settlement is fair, reasonable, and adequate in light of the circumstances of this case. Because the Settlement was reached only after extensive arm's-length negotiations with a firm understanding of the factual and legal issues presented and the relative strengths and weaknesses of their respective claims and defenses, the assessments of counsel for the Parties on the fairness of the Settlement is entitled to great deference. *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (when settlement negotiations are conducted at arms' length, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

Although the Settlement was reached at an early stage of the litigation, Plaintiff had "sufficient information on the merits of the case to enter into a settlement," and the Court has "sufficient information to evaluate such a settlement." *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 259 (E.D.N.Y. 2009). There has already been an extensive exchange of information bearing on the issues and merits of the Action to justify preliminary approval of the proposed Settlement. In particular, Plaintiff conducted a comprehensive investigation during the development, prosecution, and settlement of the Action, including, among other things, inspection of corporate books and records under *Del. C.* §220. In addition, Plaintiff had the opportunity to thoroughly review the allegations of the federal securities action filed against the Company and its top officers. Thus, Plaintiff had access to sufficient material to evaluate the case and assess the adequacy of the Settlement in light of the strengths and weaknesses of its position. *See Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) (recognizing

that "[b]ecause much of the point of settling is to avoid litigation expenses such as full discovery, 'it would be inconsistent with the salutary purposes of settlement,' to find that 'extensive pretrial discovery is a prerequisite to approval' of a settlement") (quoting *Handschu v. Special Servs. Div.*, 787 F.2d 828, 834 (2d Cir. 1986) and *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir. 1982)).

Plaintiff also engaged in extensive confirmatory discovery before signing the Stipulation, which included the review of numerous depositions and other documents from CFPB's lawsuit against Navient.

## IV.    THE COURT SHOULD APPROVE THE FORM AND MANNER OF NOTICE

Plaintiff seeks Court approval of the proposed form and manner of notice of the Settlement to current Navient Stockholders and seeks entry of an order directing such notice. The Stipulation provides that the Notice of Pendency of Derivative Action, Proposed Settlement of Derivative Action, Settlement Hearing, and Right to Appear (the "Notice"), substantially in the form attached to the Stipulation as Exhibit B, shall be posted on the websites of Navient and Plaintiff's Counsel until the Court holds the Settlement Hearing or the Settlement is terminated. In addition, the Summary Notice of Pendency of Derivative Action, Proposed Settlement of Derivative Action, Settlement Hearing, and Right to Appear (the "Summary Notice"), substantially in the form attached to the Stipulation as Exhibit C, will be published once in *Investor's Business Daily*.  The proposed Notice and Summary Notice describe in plain English the terms and conditions of the proposed Settlement, including: (i) the payment of Plaintiff's attorneys' fees and expenses; (ii) the facts and considerations that caused the Settling Parties and their respective counsel to conclude that the proposed Settlement is fair, reasonable, adequate, and in Navient's best interests; (iii) the procedure for objecting to the proposed Settlement; and (iv) the date, place, and time of the Settlement Hearing.  *See* Stipulation, Exs. B-C.  The

proposed Notice and Summary Notice are reasonably calculated to apprise Navient Stockholders of the pendency and Settlement of the Action and afford them an opportunity to present their objections.  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (holding that notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). The use of website posting coupled with other publication has gained broad acceptance in light of the rapid transition of the investment community from a paper-based to a web-based disclosure system.  *See* Use of Electronic Media for Delivery Purposes, SEC Release No. 33-7233, 60 Fed. Reg. 53458, 53459 (Oct. 6, 1995) ("The Commission believes that the use of electronic media should be at least an equal alternative to the use of paper-based media.").  As such, courts have held that the publication of notice to shareholders – on the websites of the Company and Plaintiff's Counsel and/or in an investor publication, such as *Investor's Business Daily* – "sufficiently apprise[s] . . . shareholders of the nature of the proposed settlement, the upcoming public hearing on the matter, and the opportunity to object."  *Arace v. Thompson*, No. 08 Civ. 7905(DC), 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011) (approving publication of derivative settlement by summary notice in *Investor's Business Daily*) (citing *In re PMC-Sierra, Inc. Deriv. Litig.*, No. 06 Civ. 05330(RS), 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (approving notice of proposed derivative settlement by publication in *Investor's Business Daily* and on company's website)).  Here, the form and manner of the proposed Notice, including publication and website posting, constitute the best notice practicable under the circumstances and satisfy the requirements of Fed. R. Civ. P. 23.1, due process, and any other applicable law.

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiff requests that the Court establish dates by which the Notice will be disseminated to Navient Stockholders and by

which Navient Stockholders may comment on the Settlement, and a date for the Settlement Hearing.  As set forth in the Preliminary Approval Order, Plaintiff proposes the following:

| | |
|---|---|
| The Final Settlement Hearing | At least ninety (90) calendar days from the date when the Court enters the Preliminary Approval Order |
| The Company shall post the Notice on the Company's website; the Company shall publish the Summary Notice in *Investor's Business Daily* | Fourteen (14) calendar days from the date when the Court enters the Preliminary Approval Order |
| All papers in support of the Settlement and the Fee Award filed with the Court and served upon all Parties | At least forty-two (42) calendar days prior to the Settlement Hearing |
| Counsel for the Company shall file with the Court proof, by affidavit or declaration, of dissemination of the Notice | At least ten (10) calendar days prior to the Settlement Hearing |
| Defendants shall file and serve papers, if any, in opposition to the application for the Fee Award | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| All papers in opposition to the Settlement or the Fee Award filed with the Court and served upon all parties | At least fourteen (14) calendar days prior to the Settlement Hearing |
| Any reply papers in support of the Settlement or Fee Award and response(s) to objections filed with the Court and served upon all parties | At least seven (7) calendar days prior to the Settlement Hearing |

This schedule, similar to those used in numerous derivative settlements, affords due process to the Company's stockholders with concerning their rights with respect to the Settlement.

## VI.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter an order: (i) granting preliminary approval of the proposed Settlement; (ii) directing that notice of the proposed Settlement be given to Navient Stockholders in the proposed form and manner; and

(iii) scheduling a hearing before the Court to determine whether the proposed Settlement should be finally approved.

DATED:  January 4, 2019

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 */s/ Jonathan M. Zimmerman*
Jonathan M. Zimmerman (PA 322668)
Donald A. Broggi
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
jzimmerman@scott-scott.com
dbroggi@scott-scott.com

Geoffrey M. Johnson (admitted *pro hac vice*)
**SCOTT+SCOTT  ATTORNEYS  AT  LAW  LLP**
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44118
Telephone:  (216) 229-6088
Facsimile:  (860) 537-4432
gjohnson@scott-scott.com

David R. Scott
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
david.scott@scott-scott.com

*Counsel for Plaintiff*